# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Producers Livestock Credit Corporation, a Delaware corporation,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Revier Cattle Company, a Minnesota corporation; Revier Farms Partnership, a Minnesota partnership; Revier Brand Group, LLC, a Minnesota limited liability company; Thomas Revier, an individual; David R. Revier, an individual; Christine R. Revier, an individual; and Libby A. Revier, an individual,<br><br>　　　　Defendants. | Case No._____<br><br>**COMPLAINT** |

For its Complaint against Defendants Revier Cattle Company, Revier Farms Partnership, Revier Brand Group, LLC, Thomas Revier, David R. Revier, Christine R. Revier, and Libby A. Revier (each a "Defendant" and together the "Defendants"), Plaintiff Producers Livestock Credit Corporation ("PLCC" or "Lender") states and alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.　　Producers Livestock Credit Corporation is a Delaware corporation with its principal place of business at 4809 South 114th St., Omaha, NE 68137.

2.　　Revier Cattle Company ("RCC" or "Borrower") is a Minnesota corporation with its principal place of business located in Olivia, MN.

1

3. Revier Farms Partnership ("RFP") is a Minnesota partnership with its registered office and principal place of business located at 75382 350th Street, Olivia, MN 56277. The general partners of RFP are Defendants David Revier, Christine Revier, Thomas Revier, and Libby Revier. As reflected in the following paragraphs, each of the partners are domiciled in Minnesota and are citizens of Minnesota. Therefore, RFP is a citizen of Minnesota.

4. Revier Brand Group, LLC ("RBG") is a Minnesota limited liability company with its registered office and principal executive office located in New Ulm, Minnesota and its registered office located at 75382 350th Street, Olivia, MN 56277. The members of RBG are Thomas Revier and Paul Hillen. As reflected below, Mr. Revier is domiciled in Minnesota and is therefore a citizen of Minnesota. Mr. Hillen resides at 16130 48th Avenue N., Plymouth, Minnesota 55446 and is therefore domiciled in and a resident of Minnesota. RBG is therefore a citizen of Minnesota.

5. Defendants Thomas Revier and Libby Revier are residents of Minnesota and, upon information and believe, currently reside at 75382 350th Street, Olivia, MN 56277.

6. Defendants David Revier and Christine Revier are residents of Minnesota and, upon information and belief, currently reside at 77251 U.S. Highway 71, Olivia, MN 56277.

7. This Court, therefore, has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between PLCC and each of the Defendants and the amount in controversy, as alleged below, exceeds the sum of $75,000.00, exclusive of interest and costs.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to PLCC's claims occurred in this District and all of the Defendants are citizens of or reside in Minnesota.

## FACTUAL BACKGROUND

I.      **PLCC Loans to Revier Cattle Company**

   A.      *Loan 446*

9.      On September 4, 2020, PLCC and Borrower entered into a Commercial Loan Agreement ("446 Loan Agreement") detailing the terms of a revolving loan from PLCC to Borrower, identified as loan number ending 446 ("446 Loan"). The 446 Loan had a maximum outstanding principal balance of $1,400,000. A true and correct copy of the 446 Loan Agreement is attached as **Exhibit A-1**.

10.     To evidence the 446 Loan, Borrower executed and delivered to PLCC a Promissory Note ("446 Note") dated as of September 4, 2020 (the "446 Note") in the maximum principal amount of $1,400,000.00. A true and correct copy of the 446 Note is attached as **Exhibit A-2**.

11.     The maturity date of the 446 Note was May 3, 2021 ("446 Maturity Date").

   B.      *Loan 447*

12.     On September 29, 2020, PLCC and Borrower entered into another Commercial Loan Agreement ("447 Loan Agreement") detailing the terms of a revolving loan from PLCC to Borrower, identified as loan number ending 447 ("447 Loan"). The 447 Loan also had a maximum outstanding principal balance of $1,400,000. A true and correct copy of the 447 Loan Agreement is attached as **Exhibit B-1**.

13. To evidence the 447 Loan, Borrower executed and delivered to PLCC a Promissory Note ("447 Note") dated as of September 29, 2020 (the "447 Note") in the maximum principal amount of $1,400,000.00. A true and correct copy of the 447 Note is attached as **Exhibit B-2**.

14. The maturity date of the 447 Note was May 3, 2021 ("447 Maturity Date").

C.  *Loan 449*

15. On October 8, 2020, PLCC and Borrower entered into another Commercial Loan Agreement ("449 Loan Agreement") detailing the terms of a revolving loan from PLCC to Borrower, identified as loan number ending 449 ("449 Loan"). The 449 Loan also had a maximum outstanding principal balance of $1,400,000. A true and correct copy of the 449 Loan Agreement is attached as **Exhibit C-1**.

16. To evidence the 449 Loan, Borrower executed and delivered to PLCC a Promissory Note ("449 Note") dated as of October 8, 2020 (the "449 Note") in the maximum principal amount of $1,400,000.00. A true and correct copy of the 449 Note is attached as **Exhibit C-2**.

17. The maturity date of the 449 Note was May 3, 2021 ("449 Maturity Date").

D.  *Security Agreements*

18. The 446 Loan, 447 Loan, and 449 Loan (collectively, the "Loans") are secured by the following Security Agreements executed by Borrower in favor of PLCC (the "Security Agreements"):

- Security Agreement dated June 11, 2013;

- Security Agreement dated October 10, 2019; and

- Security Agreement dated April 3, 2020.

True and correct copies of the Security Agreements are attached as **Exhibit D**.

19. Upon a default under the Security Agreements, PLCC is entitled to repossess its collateral and exercise all of its contractual and state law rights and remedies.

20. The security interests granted by RCC to PLCC are perfected by virtue of various filed UCC financing statements and Effective Financing Statements (EFS) (together, the "Financing Statements"). PLCC's collateral, which includes proceeds of the same, is described in part as follows ("Collateral"):

> A. Specific Property. "Farm products" means goods, other than standing timber, with respect to which the debtor is engaged in a cattle feeding operation and which are: (A) livestock, born or unborn; (B) all feed inventory for the cattle feeding operation; or (C) supplies used for cattle feeding operation. The term "Farm Products" is as defined by the Uniform Commercial Code and further as modified or amended by the laws of the jurisdiction which governs this transaction. All of the following, whether now owned or hereafter acquired by Debtor: all cattle and offspring, regardless of their age, weight or breed, together with sufficient feed to properly finish the livestock for market.

(the "Collateral").

### E.   *Personal Guarantees*

21. As further security for repayment of the Loans, each of RFP, Thomas Revier, Libby Revier, David Revier, and Christine Revier (each a "Guarantor" and collectively, the "Guarantors") executed a Guaranty dated as of October 10, 2019 (collectively, the "Guarantees"). True and correct copies of the Guarantees are attached hereto as **Exhibit E**.

22. Pursuant to the Guarantees, each of the Guarantors absolutely and unconditionally guaranteed the payment and performance of all loan obligations and other debts owing from Borrower to PLCC.

### F. *Borrower and Guarantor Defaults*

23. Pursuant to the 446 Loan Agreement, 447 Loan Agreement, and 449 Loan Agreement (the "Loan Agreements") as well as the 446 Note, 447 Note, and 449 Note (the "Notes"), Borrower agreed to repay the Loans by the respective maturity dates of May 3, 2021.

24. Borrower failed to repay the Loans upon maturity.

25. Such failure constitutes a default of the Loan Agreements and Security Agreements.

26. Borrower has therefore defaulted under the Loan Agreements and Security Agreements, and breached the terms of the Notes, thereby entitling PLCC to exercise its contractual and state law rights and remedies in connection with the Loan Agreements, Notes, and Security Agreements.

27. Interest, including default interest, continues to accrue under the Notes.

28. Pursuant to the Guarantees, the Guarantors were obligated make payment to PLCC. The Guarantors have filed comply, constituting a default under each of the Guarantees. PLCC is therefore entitled to exercise its contractual and state law rights and remedies available in connection with the Guarantees.

G. *Damages under Loans and Guarantees*

29. The total amount due and owing under each of the Loans (as of January 27, 2022), exclusive of attorneys' fees and expenses, is set forth below:

| Loan Number | Outstanding Balance as of January 27, 2022 |
|---|---|
| 446 Loan | $507,720.17 |
| 447 Loan | $931,556.91 |
| 449 Loan | $910,762.91 |
| **Total** | **$2,350,039.99** |

30. Additionally, as a result of the foregoing defaults and breaches of the Loan Agreements, Notes, Security Agreements, and Guarantees (collectively, the "Loan Documents"), PLCC is entitled to recover all expenses of collection, including reasonable attorneys' fees, jointly and severally from Borrower and the Guarantors.

## II. Revier Cattle Company's Purchase of Cattle with PLCC Loan Funding

31. RCC used the funds received in connection with the Loans to purchase cattle for use in RCC's farming operations.

32. RBG purchased cattle constituting Collateral from RCC with actual and constructive knowledge that PLCC held a perfected security interest in the cattle and proceeds therefrom.

33. The arrangement between the parties required RBG to pay PLCC directly for the cattle constituting Collateral purchased from RCC.

34. In connection with the Loans, RBG purchased 3,226 head of cattle constituting Collateral from RCC between January 4, 2021 and February 9, 2021 for a total

purchase price of $4,872,812.75. PLCC was entitled to receive funds from directly from RBG relating to the sale of the cattle Collateral in accordance with the parties' agreement, but RBG only paid $1,500,000.00 directly to PLCC.

35. RBG failed to pay PLCC or RCC for all of the cattle constituting Collateral, causing PLCC to suffer damages in the loss of its cattle Collateral.

### COUNT 1: BREACH OF CONTRACT
### (All Loans)

36. PLCC restates and re-alleges the preceding paragraphs as if fully set forth herein.

37. The Loan Agreements, Notes, and every other Loan Document evidencing and securing the Loans are valid and enforceable contracts.

38. PLCC has fully performed its obligations under the Loan Documents.

39. Borrower has breached the Loan Agreements, Notes, and Security Agreements by failing to repay the Loans as required.

40. As a direct and proximate result of Borrower's breach of contract, PLCC has suffered damages as of January 27, 2022, of not less than $2,350,039.99, plus interest accruing at the default interest rate through the date of judgment, all amounts as may now or hereafter be due under the Loan Documents, and PLCC's reasonable attorney's fees, costs and disbursements.

### COUNT 2: BREACH OF CONTRACT
### (Guarantees)

41. PLCC restates and re-alleges the preceding paragraphs as if fully set forth herein.

42. The Loan Documents, including the Guarantees, are valid and enforceable contracts.

43. PLCC has fully performed its obligations under the Loan Documents and the Guarantees.

44. Each Guarantor has breached his or her respective Guaranty by failing to repay the Loans as required.

45. As a direct and proximate result of Guarantors' breaches of contract, PLCC has suffered damages as of January 27, 2022, of not less than $2,350,039.99, plus interest accruing at the default interest rate through the date of judgment, all amounts as may now or hereafter be due under the Guarantees, and PLCC's reasonable attorney's fees, costs and disbursements.

## COUNT 3: ALTERNATIVELY - UNJUST ENRICHMENT
### (Borrower and Guarantors)

46. PLCC restates and re-alleges the preceding paragraphs as if fully set forth herein.

47. PLCC provided the benefit of money in connection of the Loans, which Borrower and Guarantors received and used to their benefit.

48. Demand has been made for payment, but Borrower and Guarantors have failed and refused to make payment.

49. As a result, Borrower and Guarantors, jointly and severally, have been unjustly enriched in an amount in excess of $75,000.00, exclusive of interest and costs, to

be determined at trial under the principles of unjust enrichment, and it would be unjust for Borrower and Guarantors to retain the benefits received from PLCC without payment.

## COUNT 4: REPLEVIN
### (RCC and RBG)

50.  PLCC restates and re-alleges the preceding paragraphs as if fully set forth herein.

51.  PLCC holds a perfected security interest pursuant to the Security Agreements and Financing Statements.

52.  RCC and RBG have failed to deliver possession of the Collateral, including proceeds thereof, to PLCC.

53.  PLCC is entitled to recover possession of its Collateral, including proceeds thereof, upon the occurrence of a default under the Security Agreements.

54.  Based on the facts set forth hereinabove, a default has occurred under the Loan Documents.

55.  PLCC is entitled to possession of all Collateral, including proceeds thereof, as described in the Security Agreements and Financing Statements.

## COUNT 5: UNJUST ENRICHMENT
### (RBG)

56.  PLCC restates and re-alleges the preceding paragraphs as if fully set forth herein.

57.  RGB received the benefit of the cattle constituting Collateral, which RGB received and used for its benefit.

58. Demand has been made for payment, but RGB has failed and refused to make payment.

59. As a result, RGB has been unjustly enriched in an amount in excess of $75,000.00, exclusive of interest and costs, to be determined at trial under the principles of unjust enrichment, and it would be unjust for RGB to retain the benefits it received without payment.

### COUNT 6: CONVERSION
### (RBG)

60. PLCC restates and re-alleges the preceding paragraphs as if fully set forth herein.

61. RBG wrongfully took or detained the cattle constituting Collateral or exercised dominion or control over it, and proceeds therefrom, which is inconsistent with or in defiance of the rights of PLCC, such that PLCC was wrongfully deprived of its Collateral.

62. PLCC has been damaged by RBG's conversion of the cattle constituting Collateral, and proceeds therefrom, and PLCC is entitled to recover from RBG the value of the Collateral converted.

**WHEREFORE,** PLCC respectfully requests that the Court grant the following relief:

1. Determine that the Loan Documents, including the Guarantees, are valid contracts and enforceable in accordance with their terms;

2. Enter judgment against Borrower and Guarantors, jointly and severally, in favor of PLCC in the amount as of January 27, 2022, of $2,350,039.99, plus interest accruing at the default interest rate through the date of judgment, all further amounts as may now or hereafter be due under the Loan Documents and PLCC's reasonable attorneys' fees, costs and disbursements;

3. Enter judgment against Borrower and Guarantors, jointly and severally, under the principles of unjust enrichment in an amount to be determined at trial;

4. Enter judgment against RBG under the principles of unjust enrichment in an amount to be determined at trial;

5. Enter judgment against RBG for the value of the cattle constituting Collateral that was converted by RBG;

6. Order RCC and RBG to return PLCC's Collateral.

7. Grant PLCC such other and further relief as the Court deems just and equitable.

Dated: February 2, 2022        /s/ *Phillip J. Ashfield*
　　　　　　　　　　　　　　　Benjamin J. Court (#0319016)
　　　　　　　　　　　　　　　Phillip J. Ashfield (#0388990)
　　　　　　　　　　　　　　　**STINSON LLP**
　　　　　　　　　　　　　　　50 South Sixth Street, Suite 2600
　　　　　　　　　　　　　　　Minneapolis, Minnesota 55402
　　　　　　　　　　　　　　　Telephone: (612) 335-1500
　　　　　　　　　　　　　　　Benjamin.Court@stinson.com
　　　　　　　　　　　　　　　Phillip.Ashfield@stinson.com

　　　　　　　　　　　　　　　**ATTORNEYS FOR PLAINTIFF**